UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Smeltzer Plumbing Systems, Inc, <br><br> Debtor. <br><br>------------------------------------------------------------ <br><br> Joseph D. Olsen, <br><br> Plaintiff, <br><br> v. <br><br> PG Design/Build, Inc., <br> Thompson-Hopps Pumps, Inc., <br> CB&K, <br> Northern Illinois Insulation, <br> and <br> Title Underwriters, Inc. of Rockford, <br><br> Defendants | Bankruptcy No. 06-B-72110 <br> Adversary No. 08-A-96001 <br> Chapter 7 <br> Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment. For the reasons set forth herein, the Motion for Summary Judgment is DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor was a subcontractor on a construction project in which PG Design/Building, Inc. ("PG Design") was the general contractor and CB&K Supply, Inc. ("CB&K"), among other parties, was a sub-subcontractor or provider of materials for the Debtor. The owner of the property being

developed (the "Owner"), the bank lending the funds for the project to the Owner (the "Bank"), PG Design and Title Underwriters Agency ("Title Underwriters") entered into a Construction Loan Escrow and Disbursing Agreement by which Title Underwriters would hold the funds lent by the Bank to the Owner for the project in escrow, and setting forth the terms by which Title Underwriters would make periodic disbursements of those funds to PG Design or other designees upon proper submission of documentation by the Owner.

When the Debtor filed its petition with this Court for protection under Chapter 7 of the Bankruptcy Code on November 10, 2006, Title Underwriters was holding significant funds in escrow and the Debtor had performed significant work on the project for which it had not been paid. The Chapter 7 Trustee filed an adversary complaint on January 7, 2008, claiming that the Debtor had a right to at least a portion of the funds held in escrow by Title Underwriters for work that the Debtor had performed on the project prepetition. The complaint named Title Underwriters as defendant, as well as PG Design and several sub-subcontractors or other providers of materials and services to the Debtor on the project, including CB&K, and sought a determination of the Debtor's right to funds held in escrow by Title Underwriters and a determination of the various priorities of the other defendants. The Trustee also sought to compel Title Underwriters to turn over to the Trustee any such escrow funds to which the Debtor had a right.

Only PG Design and CB&K filed answers to the complaint, and both asserted several affirmative defenses. In addition, PG Design brought a counterclaim against the Debtor for fraudulent misrepresentation, alleging that the Debtor had misrepresented that it had fully paid its sub-subcontractors and providers of material in several prepetition payment applications for progress

payments and that PG Design had had to pay such sub-subcontractors and providers of materials directly.

In the complaint, the Trustee asserts that Title Underwriters is holding more than $80,000 in escrow, and seeks a determination of the rights to that full amount, but the Trustee has filed a motion for summary judgment on a more limited issue. He believes that a portion of the funds held in escrow represent a preferential transfer from the Debtor to CB&K which he can avoid or has avoided for the benefit of the estate.

On November 6, 2006, PG Design sent an e-mail to Title Underwriters, attaching copies of unpaid invoices from CB&K and asking Title Underwriters to pay $39,445.83 to CB&K "out of the current payout for Smeltzer Plumbing." Title Underwriters may have actually printed and signed a check in the name of CB&K,[1] but before any check or funds were delivered to CB&K, the Trustee informed Title Underwriters of the Debtor's bankruptcy and any check that had been prepared was never delivered.

The Trustee has argued that, since the Debtor was owed money on the project at the time the check was purportedly printed and signed, and since an e-mail from PG Design to Title Underwriters on November 6, 2006, stated that CB&K should be paid "out of the current payout for Smeltzer Plumbing," the issuance of such check in favor of CB&K was a "transfer of an interest of the debtor in property" for purposes of 11 U.S.C. § 547(b). Because the payment would have been for an antecedent debt owed by the Debtor to CB&K during the preference period, the Trustee argued that the issuance of the check was an avoidable transfer, and that under 11 U.S.C. § 551, the right to the

---

[1]This is one of numerous facts that, while alleged in the pleadings, were not included in the parties' joint statement of undisputed facts.

check was preserved for the benefit of the Debtor's estate. CB&K was apparently persuaded by the Trustee's argument, and the Trustee alleges that he and CB&K reached a settlement that, if CB&K receives $15,778.33 out of the escrow funds, CB&K would waive its right to any more.[2] On this basis, the Trustee has brought a motion for summary judgment solely with respect to the $39,445.83 that he believes was somehow constructively transferred to CB&K and was therefore an avoidable preference.

## II. DISCUSSION

### A. Jurisdiction

An initial question is whether and to what extent this Court has jurisdiction to hear the complaint. The parties appear to agree that the matter is at least "related to" the bankruptcy case, and therefore within the jurisdiction of the district court under 28 U.S.C. § 1334(b). The central claim of the complaint is either that the escrow funds are property of the estate or that the estate has a right to the funds, and therefore the resolution "affects the amount of property available for distribution [to creditors] or the allocation of property among creditors." Natl Tax Credit Partners v. Havlik, 20 F.3d 705, 709 (7th Cir. 1994) (quoting In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir.1987)). However, PG Design has not agreed that the complaint is a core proceeding under 28 U.S.C. § 157(b)(2) and has not consented to the entry of final orders or judgment by this court. Therefore, if PG Design is correct, the Court would not be able to enter final orders or judgment and would

---

[2] The Trustee brought a motion to approve this compromise in the bankruptcy case, which was approved on January 20, 2010. At least to the extent the motion and order approving settlement refer to PG Design, the motion appears to have been premature, since PG Design is clearly still actively contesting the adversary proceeding.

instead have to submit proposed findings of fact and conclusions of law to the district court under 28 U.S.C. § 157(c)(1). See, e.g., Stern v. Marshall, 131 S. Ct. 2594, 2604 (June 23, 2011) ("When a bankruptcy judge determines that a referred proceeding ... is not a core proceeding but ... is otherwise related to a case under title 11, the judge may only submit proposed findings of fact and conclusions of law to the district court.") (internal quotations omitted).

To the extent that the Trustee seeks to avoid a preferential transfer and to reclaim the proceeds of that transfer, the claim "arises under Title 11" since it is the Bankruptcy Code that creates that cause of action. 11 U.S.C. §§ 547, 551. Avoidance of a preferential transfer is one of the theories that the Trustee asserts, and appears to be the only one he asserts in the motion for summary judgment. However, the Amended Complaint more generally seeks a determination of the Debtor's right to escrow funds and the competing rights of creditors and other parties in interest. To the extent the determination is simply under contract and other state law, it is a non-core proceeding.

In any event, since the Court is satisfied that the matter is within the *jurisdictional* grant under 28 U.S.C. § 1334(b), I need not spend much time at this point inquiring about whether the issue at hand is "core" or "non-core," since I am denying the motion for summary judgment. Because a denial of summary judgment simply lets the proceeding continue, it is not a "final order," and therefore a bankruptcy court can enter such an order rather than make proposed findings of fact and conclusions of law for the district court, even if the subject matter is 'non-core.' See, e.g., One-Eighty Invs., Ltd. v. First Int'l Bank of San Antonio, N.A. (In re One-Eighty Invs., Ltd.), 72 B.R. 35, 37 (N.D. Ill. 1987) (Leinenweber, J.) (holding that "Congress did not intend to impose the burden on the district court that would result if bankruptcy courts could not enter interlocutory orders" and

holding that "the denial of [a] motion for summary judgment is an interlocutory order").

**B. Summary Judgment is Not Appropriate Because the Plaintiff has not Demonstrated a Transfer of Property of the Debtor**

Summary judgment in favor of the Plaintiff is not appropriate because the Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law or that there is no genuine dispute as to any material fact. Fed. R. Bankr. P. 7056. The most glaring issue is that, although the Plaintiff argues that he has or can avoid a preferential transfer of an interest of the Debtor in property, he has failed to identify a transfer. The fact that CB&K might have agreed that any transfer it *would have* received would have been preferential does not mean that it *actually received* a transfer of property. Nor would a settlement agreement by CB&K by which it waived its rights to the escrow funds mean that it in fact had any right in those funds. Nor would such an agreement or admission by CB&K be binding on or have preclusive or estoppel effect on PG Design or the other parties in interest.

**1. The Check**

The Trustee first argues that the purported issuance of a check by Title Underwriters to CB&K constituted a "transfer" for purposes of Section 547(b). However, the Trustee is incorrect. First, as noted above, the Trustee provided no evidence of the check, the existence of the purported check was not included in the joint stipulation of uncontested facts, and therefore its existence is simply an unsupported allegation made by the Trustee in his pleadings. But, more importantly, even if the check did exist, the Plaintiff admits it was never delivered to CB&K, much less honored by the drawee bank, and the mere printing of the check could not constitute a transfer. "Transfer" is

specifically defined in the Bankruptcy Code, 11 U.S.C. §101(54), and the Supreme Court has specifically held that "[f]or purposes of payment by ordinary check, therefore, a 'transfer' as defined by § 101(54) occurs on the date of honor, and not before." Barnhill v. Johnson, 503 U.S. 393, 400 (1992). At issue in Barnhill was whether a transfer occurred on the date a check was delivered to the payee or the date the check was honored by the drawee bank. Here, there was no allegation that the check was ever even delivered, much less honored. Therefore, the Plaintiff has not demonstrated that the purported check constituted a transfer.

## 2. The e-Mail

The Trustee's other argument is that the e-mail that PG Design sent to Title Underwriters on November 6, 2006, somehow constituted a transfer of escrow funds because PG Design 'acknowledged the amount due CB&K and directed and certified Title Underwriters to pay to CB&K $39,445.83.' Again, as an issue of fact, the Plaintiff failed to demonstrate that PG Design actually had the power to direct Title Underwriters to make payment or that Title Underwriters was required to follow its direction, nor was such a factual allegation included in the joint stipulation of facts. But more importantly, the Plaintiff does not explain how a mere direction to transfer funds, even if PG Design had the power to make such direction, could constitute a 'transfer' for purposes of Section 547(b) if the direction to transfer was never carried out. As the Supreme Court stated in Barnhill, the "receipt of a check gives the recipient no right in the funds held by the bank on the drawer's account. Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored." 503 U.S. at 399. If the making and delivery of a check does

not constitute a 'transfer' for purposes of the Bankruptcy Code, then certainly neither can a request to make a payment contained in an e-mail. Since the Plaintiff has not demonstrated that funds or other property were actually transferred in response to the request, he has not demonstrated a preferential transfer.

## C. Interest in the Escrow Funds

Additionally, even if escrow funds had been transferred, the Plaintiff has not explained how funds of the Owner held in escrow by Title Underwriters constituted an interest *of the Debtor* in property. In the motion for summary judgment, the Plaintiff does not suggest under what theory he believes the Debtor might have had a direct interest in the escrow funds. Nor is any right clearly apparent from the face of the exhibits presented by the Plaintiff in support of the motion. The Construction Loan Escrow and Disbursing Agreement pursuant to which the escrow funds were held expressly stated that the signatories - the Owner, the Bank, and Title Underwriters - "agree that this Agreement is not intended by any of the undersigned to give any benefits, rights, privileges, actions or remedies to any person, partnership, firm or corporation other that [sic] [Title Underwriters, the Bank, and the Owner] as a third party beneficiary or otherwise under any theory of law." The Debtor was not a signatory to the agreement and PG Design signed the agreement, but only to acknowledge that it was "neither a party to said Agreement, nor that said Agreement confers any benefits, rights, privileges, actions or remedies to any person, partnership, firm or corporation other than [Title Underwriters, the Bank and the Owner] under a third party beneficiary theory or otherwise under any theory of law."

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is denied. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: December 9, 2011

The Honorable Manuel Barbosa
United States Bankruptcy Judge

# CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on December 09, 2011.

**Joseph D Olsen**
Yalden Olsen & Willette
1318 E State Street
Rockford, IL 61104

**Shawn C Fulbright**
Fulbright & Associates, P.C.
1707 East State Street
P.O. Box 1510
Rockford, IL 61110-0010

**Debra A Delia**
Oliver Close, LLC
124 North Water Street
Suite 300
Rockford, IL 61107

_Kimberly Conrad_
Kimberly Conrad, Judicial Assistant